The case this morning for argument is 15-1979 GE Lighting Solutions v. Lights of America. Good morning, Mr. Rainey. Good morning, Your Honors, and may it please the Court, Richard Rainey on behalf of GE Lighting. Your Honors, the District Court held on summary judgment that the asserted claims of the 999 and 864 patents were invalid based on its determination that the claim term to heat sink in the 999 patent and elongated in the 864 patent were indefinite. We submit that determination was based on some fundamental legal errors and that when the proper law is applied, this Court should reverse these terms are sufficiently definite within this Court's precedent. Well, can I ask about that? In my own experience, we just haven't had that many indefiniteness cases. So I really would appreciate a little help on this. Let's assume that we agree with the District Court that this is elongated, only elongated. We agree with the District Court that your proposed click construction, which was what? Extensive length, is indefinite and doesn't cure the indefiniteness. But let's assume that if we independently scoured the record, we could conceivably come up with something that satisfied the definiteness requirement. For example, going back to the prior art and the disc shape, adding on the fins, come up with some objective boundaries that we were satisfied with. Is that an acceptable way to proceed when no part, no side, including your side, has ever advocated, assume for a moment, my hypothetical, a claim construction that we think is anywhere close to definite? So I think this is an impact of considering claim construction and indefiniteness together. The Court had both of these legal issues in front of it at the same time. So it seems to us that if that's the Court's view, that you have to actually build all these parameters into the claim construction. I think, honestly, I don't think that if you read the Biosig case, for example, that's the approach this Court took at all. It did not impose the boundaries of the claim term into the claim construction itself. Rather, it looked at the intrinsic evidence and found those blaze marks in the record. So I think if you follow Biosig, this Court's guidance so far has been those guideposts don't need to be in the claim construction. But if that's the guidance the Court wants to make, then I think the appropriate thing to do would be to remand and say you have to consider all these issues together. But where does that leave us? If you've never made the argument, so we aren't independently allowed to go through the record and come up with something that we think satisfies the reasonable certainty standard? Well, so these issues are coming up together in this appeal. It seems to me there is authorization in the Court if that's what the Court wants to do to resolve these two legal issues together. But that's, as I said, that's not the guidance that the Court has given thus far. The Biosig case is very clear. That claim construction said nothing about the lower or the upper boundaries. There wasn't enough in the record for a person of ordinary skill in the art to understand where the lower and the upper boundaries were, as well as perhaps the side boundaries as well to that claim term. So the issue that was, frankly, being resolved here with respect to elongated was a single dispute. Is it a one-dimensional limitation or a two-dimensional limitation? And that's what the parties argued over. And they were, as often is the case in claim construction, dealing with a term that is pulled out of the claim writ large in isolation. Yeah, but it's a pretty clear term. I mean, the prosecution history indicates that this was the be-all and end-all. I mean, you got your claim because you added the word elongated to differentiate from the prior art, which is kind of weird because the prior... So how would you characterize the prior art and the differences between why you did not read on a disc-shaped? So I think the prosecution history here is very clear that the prosecuting attorney took the position with the examiner that the Reisenhower and Sarazawa references, the disc or plate-shaped structures were not elongated, and the Patent Office agreed. Those are not elongated structures. Nobody has argued to the contrary. Supposing we said that, looking at this, that claim one provides the lower bounded elongated, by specifying it must be long enough to attach the LED assembly spreader and appendages, and claim eight provides the upper bound of elongated by specifying that the thermally conductive elongated core is designed to be accommodating to existing light fixtures. I mean, that's the essence of our argument. That can't save anything other than claim eight. You can't get the upper... If we think we need an upper boundary, we can't borrow it from another claim to make claim one definite, can we? Well, certainly claim eight stands on its own. We've made that point in the brief. But I would argue, actually, if you look again at the Biosig case, the upper boundary in that case did not come out of the claim itself. It came out of the environment in which the apparatus is intended to be used. It's a piece of exercise equipment. The court said the outer boundary is the width of the human hand. And similarly here, it's very clear from the specification of the 864 patent that this invention is intended to be used in light form factors that are out of the organ. But you've got claim one and you've got claim eight. There must be a difference between the two. If the difference is the outer boundary, then why would we use that? And if we are assuming that that satisfies the upper boundary, the upper objective limitation, how can we import that into claim one? It's clearly not part of claim one. So claim eight specifies two specific form factors, MR and PAR type form factors. Those are clearly not limitations on claim one, but this invention is designed to fit into other form factors. There are other form factors beyond MR and PAR. So the idea here is that's what this invention is directed to be used for. But how do we know which they are or where they exist? Is there something in the specification that guides us to claim one, having some of those form factors? I think the specification is clear that this invention is designed to be used in existing form factors. And people of ordinary skill in the art understand what the form factors are that are out there. There are a number of them. So MR and PAR are two types of those. There are others. So my basic premise is you have guidance to the person of ordinary skill in the art what the lower boundary is and what the upper boundary is coming from the claims, the specification, and the prosecution history. It has to be elongated. How could your addition of the word elongated have overcome the prior art? Because don't Reisenhower and the other reference extend in length, too? So if you take that term and ride into outer space without any connection to the intrinsic record, which is exactly, we would submit respectfully what the district court judge did here, you can argue that a disk has some length to it, so therefore it extends in length. But if you look at that term as it's used in context with the requirements, as Judge Wallach pointed out, of fins extending around the core, and when you put that back into the claim, it's very clear that, as the experts testified, this structure has to extend beyond what those structures lay down. They have sort of the baseline. It can't be shorter than those structures, but it could potentially be longer than those structures. And the idea here is, but you were proposing a claim construction for elongating. So shouldn't that claim construction that you proposed have satisfied and dealt with those issues? So I don't think there's any requirement, again, that the claim construction answer all the questions in the case. And again, I would just turn back to this Court's guidance in BIOCIG. I'm really confused by what's going on here. Sorry. No. It's fine. I suppose it's me. I'll take the blame. You put the elongated in to overcome the prior art. I'm going to use a hypothetical because I don't have the facts at hand as well as I should. This disk has some elongation because it goes down a little bit. Let's say it has a quarter inch elongation. Correct. Your view is you put the elongated in to mean that it's longer than the quarter inch. You have to because otherwise you're reading on the prior art, right? It extends beyond the prior art. It extends beyond the quarter inch. So the minimum has to be, it has to be elongated over a quarter of an inch. Taking into consideration the other elements in the claim as well. And then it has to go down whatever. I don't really care about how big it is. Maybe it's four inches. Maybe it's two inches. Maybe it's whatever. But at least because you're extending over that prior art, it has to mean something other than, it can't encompass a quarter inch. Yes. And I think that I don't... You propose a claim construction that is so broad that it includes a quarter of an inch. Again, I disagree that the proposed construction... So then do you agree that elongated in length means elongated more than whatever the prior art was? What I would agree with is the thermally conductive elongated core is not the structures of Serra Zala and Reisenauer, which were the two that were distinguished over. I think to take again, to take a term out of the claim and try to argue that everything rides on one word here is not what the exercise we're supposed to be engaged in here is. Well, except that this is the one word that got you your patent. I might agree if it wasn't the key operative word, but it is. The arguments in the prosecution history, JA 407 and 409, make clear that the reliance wasn't entirely on the word elongated. There was discussion of thermally conductive elongated core and moving heat away from the LED structure farther than the prior art cores, which also didn't have fins extending around as well. Let me ask you this in a more general way. Let's assume elongated is generally... We wouldn't consider it indefinite because we can look at the specification and the like and see that a reasonable person would understand that it has a meaning under sufficient to use. You propose a claim construction that renders it indefinite. What do we do there? I know you don't think your claim construction renders it indefinite, but let's assume it does. What do we do when we have a claim term that in the claim and in the patent is not indefinite, but your construction renders it indefinite? Your Honor, I think... My reaction to that is I don't think that was the intent here. I'm asking a hypothetical though. I know you don't agree with that hypothetical, but what do we do? To me, again, the exercise here is to arrive... If finding the right result, the truth, the accurate result, and the legal question is what this exercise is about, then the court should fix that. If the court thinks... Then you should get a do-over on your claim construction. Yes. I think if that's the way the hypothetical is set up, then yes. As I said, our view here is you have to read the claim as a whole in order to understand its boundaries. If we were to take the initiative and come up with what we think is the reasonable certainty, that answers the claim construction question, does it not? By coming up with the reasonably certain definition is the claim. That's how we construe the claim. Again, I would go back to the guidance the court has given so far in the Biocid case is that these are two separate inquiries, that the court will look to the intrinsic record independent of what the claim construction is to find the boundaries. So far, that's been the court's guidance. That's the inquiry, but I'm talking about the result, the consequence. The consequence was the same there. The court did not say in Biocid, we're going to impose the width of the human hand on the claim construction or the lower boundary of the two electrodes not coming in contact on the claim construction. How does this work in the real world? Ultimately, we're all moving up towards an infringement determination. If we conclude we find this is reasonably certain because we construe it as follows, do you argue that you're going to be able to proceed with an infringement on a claim construction that's different than the one you propose? Do you still think you're going to be able to proceed on your initial claim construction, extending in length? Read in the context of all the other limitations in the claims, I don't think anybody would, for example, no expert or lawyer on the GE side of this would argue that this nevertheless covers the structures that were distinguished during prosecution history. Can you tell me, there was some discussion in the record and the district court had this exchange with your expert about, no, what I really mean is not extended in length, but that it's long enough. You argue that in your brief. What does that mean? What does long enough mean? Well, again, it's the very same, going back to the Biocid case, the very same construct. You have to look at this invention in the context of, first of all, through the... Well, that's what I'm asking you to tell me, long enough to, there's got to be something at the end of that sentence, right? And I think what we've said in the brief is long enough to function to draw heat away from the LED light and distribute it out through the fins, the various elements of the claims. The heat flows down through the spreader, down through the core and out through the fins. Long enough for that to function to... Thermally conductive elongated. Yes, exactly. I mean those... I guess you use this question then that in order to differentiate it from the prior art, it has to be long enough, but at least over a quarter of an inch, which was in the prior art. In that hypothetical, yes. Even if that hypothetical, the under the quarter of an inch might also be long enough to do the thermal conduction? So I think by operation of law, the prior art is out under prosecution disclaimer, well we can't cover what the element was added to distinguish over, but again, the claim element we're talking about here is thermally conductive elongated core, not just elongated in isolation. Well I understand, that's the world we live in though. I mean the claim construction was over the word. This comes up not infrequently in our cases, where obviously Phillips and others say we have to look at the claim term in the context, but it's a little hard to do when markment is done based on particular terms, and we didn't make that world. I don't know if you could have influenced or not at the district court stage. Well so again, I think the dispute that we were confronted with on this term at the district court was whether it was a two-dimensional or a one-dimensional limitation. These issues did not come up in the context of claim construction. They were raised in the context of indefiniteness. Well why don't we restore a couple of minutes for rebuttal and hear from the other side. Good morning, your honors. May it please the court. Garrett Leach on behalf of the lighting manufacturers. I think the question, Chief Judge Proce, you asked right at the get-go was can this court come up with a definite claim construction. I think the answer to that is we looked at the precedent. We didn't find any precedent where this court could take their successful claim construction and fix it for them. And the reason I think that's not the case is I think it would set a bad precedent. Because what you would have is situations where patentees clearly trying to cover products as broadly as they can for infringement purposes would advocate for claim constructions as broad, over broad as possible. If they get a district court judge like we did, who actually takes time and effort and really goes through and looks at this definiteness inquiry and determines that the claims are indefinite, they'll just come up to the federal circuit and say, you know what, we gave it a shot. Can you fix it for us now? Can you send it back and tell the district court what the construction is supposed to be? I don't think that's what we want here. In fact, if you look at what the Supreme Court said in Nautilus, and I quote, absent a meaningful definiteness check, patent applicants face powerful incentives just as they did to inject ambiguity into their claims and eliminating that temptation is in order. So do you mean that leaving aside even the claim construction, there was a dispute here and papers filed and responses made to the indefiniteness inquiry? Absolutely. So are you saying there's kind of a waiver thing unless what they posited to the district court in connection with not claim construction now, indefiniteness, unless they came up with the satisfactory, if we think there's a satisfactory reasonable construction, but they didn't present it to the district court, then our hands are tied and we can't do that? Again, we didn't see any precedent that said you could. What happened in Biosig? Because your friend mentioned Biosig. Yeah, so in Biosig, that was where the case came back from the Supreme Court under the new standard. And this court looked at it under the new standard and determined there was stuff in the intrinsic record that allowed there to be limitations. I think that's a different situation. They didn't change the claim construction. They didn't say, we're now going to make this a definite claim construction. The problem they have here on both terms, and I submit it's exactly the same on Tahit Sink as it is elongated. In their briefing, they really hit on this extrinsic evidence. It's the exact same thing. There's an intrinsic record, an argument in each prosecution history that creates this uncertainty that when you read it in light of the claim construction that they advanced and they got- Wait, I want to talk about two different things because in the 864, we have the prosecution history for that claim. We do for the 999 too. And then in the 999, I thought we were relying on the prosecution history in another- That was advocated to, I think, confuse the issue. If you look at our briefing- I thought you conceded that it was extrinsic evidence. Oh, the 864 is, but there is stuff in the 999. In the 999 prosecution, and let me just read that for you because I don't think this came across as clear because in their gray brief they didn't even address it, which we found kind of telling. But in the prosecution of the 999, and this is at JA5912, they had to overcome the prior art, the Roller reference. And the way they did that is they added the fact that Roller didn't heat sink. And I quote the language that they used there. They said, and Roller, by the way, we have that in the appendix. I can get you the site for that. But Roller was a lighting assembly that had a light source, a control module, a heat sink in between them, all one combined thing, clearly in thermal communication. Just under the law of thermodynamics, they're all connected. There's no dispute about that. What they said about Roller to overcome that in the prior art is they said, there is no disclosure or fair suggestion in Roller of any thermal communication between the control components and the heat sink. I'm not fine. Are you looking at 5912? 5912. Is that at the bottom of the page? I'm looking at the page. We've only got one. So, it's page 5912, J5912, the bottom of the first paragraph there. With their distinguish in Roller, there's no disclosure or fair suggestion in this Roller reference, which again is one interconnected lighting assembly, of any thermal communication between the control components and the heat sink, which is their big new invention, as would be necessary to provide heat sinking. The reason they said that is because in Roller, there was an intervening layer between the heat sink and the control module. Just like we've argued in this case, you can't have something shielding that. That's not heat sinking. That's what the record would show. However, their construction, which they got at the district court, two different district courts, would allow that to be included. The chief judge, Polster, when he went through this, specifically asked them. There was about four pages or five pages of testimony on this. We are not saying that it should go as broad as including things that are shielding. They said, absolutely, your honor. That should be included, even though it's completely inconsistent with what the scope was saying. Can we get back to it while we're at it? Sure. Sorry. As you could tell, some of us are struggling with that here. Absolutely. Why isn't it sufficiently certain, reasonably certain, if we conclude, one, we've got to cut out the prior art. Let's assume that's a half an inch, a quarter of an inch long. We know when we look at the whole specification in the context of the whole claim, we're dealing with the minimal limit, which deals with the fins. We have a bottom limit. We don't have a top limit. By necessity, this can't go on forever. We're dealing with particular devices, so we know at the limit. Why is that not sufficient? Whether we call it a claim construction or we call it a decision on indefiniteness, why is that not construing the term elongated with sufficient clarity to let the patent stand? I think what you're talking about is reconstruing the claim to not just mean extending in length, which everything extends in length. To actually say, we're going to say extending in length now means you have to be a minimum of what the prior art shows. The problem with the prior art, though, is you've got a drawing. You say a quarter inch. I don't know that it's a quarter inch. I don't know exactly where that came from. What's the construction you came up with? You came up with the construction which says, which I thought was based on the prior art, where you said it has to be longer than- Greater in length than width, which this court has found numerous times is the appropriate construction for elongated. That's the one we came up with. Is that, in your view, consistent with the disc shape that we were talking about in the record? We agree that that would be consistent with the disc shape, yes. Now, whether or not this court can now adopt our construction, because we can't raise it- I don't get that construction either. It can be elongated and still be greater in width than length, can't it? If it's a big disc, it still goes down a certain amount of thing. It's elongated. I guess it depends on your read of elongated. The whole point of ... This is not a general usage of the term elongated here. It was used to overcome the prior art and get that patent. Correct. It has to have some content in the terms of the prosecution history, the specification and the like. I certainly agree with you that the claim construction they have taken at its face seems very indefinite. I don't think we can invalidate a patent just because there's an overbroad claim construction. Don't we have to look at the patent, the claims, and all of it to determine whether a reasonable person would find it definite? We've done that for elongated. Elongated is not used in the specification. When we go to the prosecution history, what do we have? We have this prior art. They keep saying, well, you got to have fins around it. We don't know what size of fins. There's all kinds of different sizes of fins. I don't think that gives it any determination. In fact, when you look at the prosecution history, it's clear that there's an uncertainty there because we don't know where elongated begins and non-elongated ends. In fact, we asked their expert that. We've all read the cases. You don't need precise numbers, right? Correct. If we have some, whether it's from the disc shape in the photo with the figure we're looking at or where the fins are as explained in Mr. Rainey's brief, let's assume that we can discern some lower limit. All we're left with is how do we discern something around the ends of a higher limit? You look to the device and you know generally what we're talking about. Why is that not sufficient? Well, because I think, Your Honor, to me you're still in that zone of uncertainty. We're one skill in the art. Again, you can say that disc shape. What's a disc? Can a disc be this? Can a disc be this? I mean, are we supposed to measure the prior arc? Well, apparently we start with the patent that gets the clear and convincing evidence standard for overturning it. We start with the patent and the examiner was going to reject the claim and granted it based on the addition of the word elongated. Yes. So that's our starting point. Can I ask you another? Sure. I do seem to reject the notion that we could do this on our own, but isn't it a fact that even in a regular claim construction proceeding, this court is free and in fact has rejected both parties' claim constructions and come up with its own claim construction in that context? And I think that's when claim construction is at issue. Now, you could say indefiniteness is a part of claim construction, but I'll submit to this court, you often hear arguments about invalidity where somebody loses under 102 or 103. And maybe their claim construction that the patentee advocated for in that case is broader than it should have been because they're trying to pull in more infringement stuff. But they still lose because they make it so broad that it pulls in prior arc. This court doesn't say, I'm going to now give you an opportunity to go back and fix that claim construction and make it narrower and give what we think should be the proper claim construction because they've won their claim construction. So they don't really have a right at this point to appeal. But we used to, right? I mean, the law used to be that you're supposed to conspire a patent in order to preserve its validity. And we cabin that soundbite quite strenuously, I think, in Phillips, right? You did. And again, that's in the claim construction realm. This is more of the invalidity realm. And I don't think this court, as a practice, typically goes back. And again, I'll take it in the 102, 103 world and says, you construed this too broadly. It's invalid in the prior arc, but we're going to fix it for you because you got it wrong. I think that's what the they're giving patentees. OK. So if we take this out of the claim construction world, why is it a waiver kind of argument? If we're just looking at the question of how do we define it for purposes of indefiniteness and reasonable certainty? Are you saying that because we're not allowed to come up with the way to define it in the context of indefiniteness other than the one presented by the parties to us on appeal? I think that's right, Your Honor. I think, as the court said even earlier today, we didn't raise, I don't think any parties raised any sort of claim construction arguments in this appeal. Nobody's argued that the claim construction's wrong. I mean, we probably would have liked to have, but the court, the law says we can't because we prevailed on invalidity. They certainly didn't because that was their claim construction. Is there anything in the record here that would give us any guidance as to how all of this impacts the infringement? We're kind of at sea here. We used to not be able to do that. Now we can. Yeah, I don't think there's, I'm trying to think if there's anything in the record. I mean, certainly, if something's shielded or insulated, I can tell you all the accused products have insulation between the control module and the heat sink. They're clearly not trying to heat sink exactly what their invention is. So, they don't want to change the claim construction. They don't want to narrow it with what they said in the prior art. Similarly with elongated, most of our... Just tell us stuff that's in the record. Okay, I'm sorry. So, what in the record tells us what the limits of a disk are? I don't think anything does other than maybe that picture. The picture you could look at, and there's a couple of different pictures. You've got two different prior art references. Looks pretty flat. Well, there's, yeah, there's one that's flat, but those are supposed to be examples. I don't think they're necessarily drawn to scale. I know. Your prior discussion has me thinking about disks that are 10 feet wide, something in a space telescope. Correct. 10 feet wide and 5 foot thick at the center, narrowing to... There's a lot of sporting arenas that are disk shaped. They're very, very large. So, I don't think it gives us any more clarity or takes us out of that zone of uncertainty that we're currently in with both these terms. I mean, I think the most... I'm trying to follow you here. Are you now arguing that even if we ignore this really broad claim construction, that there is no claim construction that we could get to that would make this patent definite? No, Your Honor. I don't know that I'm arguing that. I don't know that we've really considered that. Okay. So, let me ask you that. Let's throw out this claim construction, not look at it. Is the patent indefinite on its face? I have not seen a claim construction that makes it definite. I haven't heard one advocate... I think I'm asking you a little different question because I'm trying to get outside of the claim construction question. Let's just assume we're not going to talk about claim construction. We're going to look at this in terms of indefinite. We have this specification as it is. Does it meet the standard for definiteness? And if it doesn't, why not? I don't believe so because I believe in the claim construction. And again, I know you're throwing it out, but you have to do some claim construction. No. I want you to answer my question without claim construction. So, without claim construction, can we find this claim construction? Do we know, would a reasonable person under the new standard find that this gives certainty? Without claim construction, I do not believe so. Because I don't even know where you would start if you don't... If you're just saying the word elongated... Do we know what the invention is under that claim based upon the specification, the prosecution history, and the claim term? So, we know it's... With reasonable certainty. I do not believe so because you look at what they did in the prosecution history and the distinctions they made, we do not know what elongated is. There is just not clarity there under any construction. So, again, I hate to keep going back to claim construction, but that's what we keep getting pounding into our heads as patent lawyers. I see my time is up. Are there any other questions? Thank you. Thank you. Just a couple of quick points in rebuttal. One, I think... I'm not sure that could appear in a LED structure, Your Honor, which is what we're talking about here. So, I'm not sure how to answer that question. I mean, again, this invention is an LED replacement bulb for existing form factors. The people at Ordinary School in the Art have a very clear understanding of what the outer boundaries and the lower boundaries are here. And I think that the examiner and the applicant here had a very rich discussion... And what are they? The lower boundaries and the upper boundary. Well, the lower boundary is clearly not the structure disclosed in Reisenhower and Serizawa. We know that. And this court has said time and again, Deere versus Bush Hall and other cases, that mathematical precision is not what this exercise is about. And this invention isn't about mathematics. What's the upper boundary? The upper boundary is the existing form factors, which is precisely what this invention was intended to be used in. One last comment. There was some discussion about the prosecution history of the 999 patent. And I believe counsel stated it's undisputed. We hotly dispute what the roller disclosure was. We think it's very clear in the prosecution history. We're talking about a totally different kind of device. That's all I have. Thank you. We thank both sides. The case is submitted. And that concludes our proceedings for this morning. All rise. The Honorable Court is adjourned until tomorrow morning. It's at o'clock a.m.